UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

Bruce John Archiebald Turner,

Plaintiff,

v.

City of Rockford, Minnesota, *Municipal*;
Michael Christopher Couri, *City of Rockford Attorney Office*,

Defendants.

Civil No. 25-313 (DWF/EMB)

MEMORANDUM
OPINION AND ORDER

INTRODUCTION

This matter is before the Court on several motions filed by Plaintiff Bruce John Archiebald Turner (Doc. Nos. 3, 14, 31, 57, 59, 62) and Defendants City of Rockford (the "City") and Michael Christopher Couri (Doc. Nos. 17, 41, 46). For the reasons set forth below, the Court dismisses Turner's claims against Defendants with prejudice.

BACKGROUND

In December 2021, the State of Minnesota brought a criminal case against Turner for local zoning code violations. (Doc. No. 16 at 6.) The State filed an amended complaint on November 9, 2022, with two charges of non-permissible use in commercial district and two charges of nuisance. Complaint at 1-2, *State v. Turner*, No. 27-CR-21-

22181 (Minn. Dist. Ct. Nov. 9, 2022).[1]  The prosecutor voluntarily dismissed the case in the interest of justice on January 11, 2023.  (Doc. No. 43 ("Kuboushek Aff.") ¶ 3, Ex. B.)

The City, through Couri as its attorney, filed a civil complaint in state court against Turner on February 5, 2024, alleging six violations of City Code:  three zoning violations, two nuisance violations, and one junk motor vehicle violation.  (*Id.* ¶ 4, Ex. C.)  Prior to filing the complaint, Couri served the summons and unfiled complaint on Turner at his property.  (Doc. No. 16 at 8.)  The City moved for summary judgment on September 13, 2024.  (Kuboushek Aff. ¶ 5, Ex. D.)  In its motion, it included a notice of the hearing date, which was set for 3:30 p.m. on October 16, 2024.  Motion and Notice of Motion at 1, *City of Rockford v. Turner*, No. 27-CV-24-1821 (Minn. Dist. Ct. Sept. 13, 2024). The City served its motion, including the date of the hearing, on Turner via mail that same day.  Affidavit of Service by Mail, *Turner*, No. 27-CV-24-1821.  In response, Turner moved to dismiss the City's complaint on September 23, 2024, arguing improper service of the summons and complaint and due process violations.  (Kuboushek Aff. ¶ 6, Ex. E.)

Judge Bridget Sullivan held the summary judgment hearing on October 16, 2024, as scheduled.  (*See id.* ¶ 8, Ex. G. at 2.)  Turner did not appear.  (*Id.*)  On October 30, 2024, Judge Sullivan granted the City's motion for summary judgment.  (*Id.*)  Among other things, Judge Sullivan:  (1) ordered Turner to remove all items constituting a

---

[1]  The parties did not provide the Court with all relevant records from the state court cases, such as the operative criminal complaint.  However, the Court takes judicial notice of this document and any other relevant document as it is a public record from a state court proceeding.  *See Stutzka v. McCarville*, 420 F.3d 757, 760 n.2 (8th Cir. 2005).

nuisance, all junk motor vehicles, and all construction materials stored outside from his property; (2) granted the City and its agents the right to enter Turner's property if he failed to abate the violations within sixty days of the date of the order; (3) permanently enjoined Turner from maintaining similar violations on his property; and (4) permanently enjoined Turner from using his property as a residence unless such usage was later permitted by ordinance. (*Id.* at 7-8.) After entry of the judgment, Turner filed a memorandum in response to the summary judgment issuance on December 17, 2024. (Kuboushek Aff. ¶ 9, Ex. H.) The state court never issued a response to that memorandum and Turner never filed a motion to reconsider or an appeal. (*See* Doc. No. 16 at 10.)

On January 27, 2025, Turner filed this case against Couri and the City. (Doc. No. 1.) Turner's amended complaint alleges the following claims: (1) a due process violation; (2) an equal protection violation; (3) abuse of process; (4) collusion; (5) fraud and misrepresentation; (6) intentional infliction of emotional distress; (7) trespass; and (8) negligence. (Doc. No. 10 ("Am. Compl.").) As relief for these claims, Turner asks the Court to declare that Defendants violated his constitutional rights, enjoin Defendants from interfering with his property rights, award compensatory and punitive damages, award attorney's fees, award emotional distress damages, award trespass damages, and award negligence damages. (*Id.* at 6.)

Turner moved for a temporary restraining order, summary judgment, a summary judgment hearing, to enforce a temporary restraining order, for a permanent injunction against non-party Carole Thingvold, and to reconsider the motion to strike. (Doc. Nos. 3,

3

31, 57, 59, 62.)  Defendants have moved to dismiss this case under Rules 12(b)(1) and 12(b)(6) of the Federal Rules of Civil Procedure, as well as for summary judgment under Rule 56.  (Doc. Nos. 17, 41, 46.)

## DISCUSSION

The Court first addresses Defendants' subject matter jurisdiction challenge.  *See Oglala Sioux Tribe v. Fleming*, 904 F.3d 603, 609 (8th Cir. 2018) ("[W]e have an independent obligation to determine whether subject-matter jurisdiction exists before proceeding to the merits, even when no party raises the issue.").  Upon finding that it has subject matter jurisdiction over almost all claims, the Court moves on to the parties' cross motions for summary judgment.

**I.    Subject Matter Jurisdiction**

A party may challenge a court's subject matter jurisdiction under Rule 12(b)(1).  Fed. R. Civ. P. 12(b)(1).  The party invoking federal jurisdiction has the burden of proving jurisdiction by a preponderance of the evidence.  *V S Ltd. P'ship v. Dep't of Hous. & Urb. Dev.*, 235 F.3d 1109, 1112 (8th Cir. 2000).  A Rule 12(b)(1) motion may challenge a plaintiff's complaint either facially or factually.  *Osborn v. United States*, 918 F.2d 724, 729 n.6 (8th Cir. 1990).  On a factual attack, a court may consider matters outside the pleadings to determine whether it has subject matter jurisdiction.  *Id.*  Here, Defendants assert a factual attack on the Court's subject matter jurisdiction, specifically asserting that the Court lacks jurisdiction under the *Rooker-Feldman* doctrine.  (Doc. No. 42 at 6.)

Under the *Rooker-Feldman* doctrine, lower federal courts lack subject matter jurisdiction over "cases brought by state-court losers complaining of injuries caused by

4

state-court judgments rendered before the district court proceedings commenced and inviting district court review and rejection of those judgments." *Exxon Mobil Corp. v. Saudi Basic Indus. Corp.*, 544 U.S. 280, 284 (2005). The doctrine is confined to situations "where a party in effect seeks to take an appeal of an unfavorable state-court decision to a lower federal court." *Lance v. Dennis*, 546 U.S. 459, 466 (2006) (per curiam). Not all claims that challenge a legal conclusion in a state court judgment qualify under this doctrine. *Exxon Mobil*, 544 U.S. at 293. The claim must also seek relief from the state court's judgment. *Hageman v. Barton*, 817 F.3d 611, 615 (8th Cir. 2016).

To determine whether a claim qualifies, a court should look to the nature of the claim or alleged injury and the kind of relief the plaintiff seeks. *See id.* at 614 ("The boundaries for application of the doctrine depend upon the nature of the federal claims and whether the plaintiff in federal court, in fact, seeks relief from the state court judgment."). For example, in *Kvalvog v. Park Christian School, Inc.*, the lower court had jurisdiction because the plaintiffs' claims did not seek relief from a state court judgment but instead "request[ed] relief for the Defendants' allegedly illegal acts and omissions during the proceedings." 66 F.4th 1147, 1152 (8th Cir. 2023). In contrast, in *Skit International, Ltd. v. DAC Technologies of Arkansas, Inc.*, the lower court did not have jurisdiction because the plaintiff's alleged injury stemmed directly from the state court judgment, not from some separate conduct, as the plaintiff sought to have the state court's judgment declared null and void for lack of service of process and lack of jurisdiction. 487 F.3d 1154, 1156-57 (8th Cir. 2007).

5

Most of Turner's claims pass this jurisdictional hurdle. Turner primarily seeks damages for allegedly wrongful acts by Defendants during the state court proceedings. While these claims may indirectly challenge the state court's conclusions on things such as the sufficiency of service, he is not seeking relief from the state court judgment itself. However, to the extent that Turner requests injunctive relief that would directly undermine the state court judgment, the Court lacks jurisdiction. Based on the Court's liberal reading of the amended complaint, this is only an issue for Count VII. Count VII asserts a trespass claim for which Turner seeks damages but also seems to seek an injunction preventing further interference. Turner also includes a general request for a "permanent injunction preventing Defendants from interfering with [his] property rights." (Am. Compl. at 6.) The state court judgment gave Defendants certain rights to enter Turner's property. Turner attempts to appeal the state court's decision by requesting injunctive relief from this Court that would directly contradict the state court judgment. Turner's injunctive relief requests are barred by the *Rooker-Feldman* doctrine. Thus, the Court dismisses those theories of relief.

**II.     Cross Motions for Summary Judgment**

Turner and Defendants[2] both move for summary judgment under Rule 56. This indicates to the Court that no additional discovery is required and the record is complete. *See generally Jackson v. Riebold*, 815 F.3d 1114, 1121 (8th Cir. 2016) (explaining timing

---

[2]     The Court grants Couri's motion to join the City's motion for summary judgment. (Doc. No. 46.)

of motions for summary judgment). As such, the Court finds that early summary judgment is appropriate here.

Summary judgment is proper if there are no genuine issues of material fact and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a). The Court must view the evidence and the inferences that may be reasonably drawn from the evidence in the light most favorable to the nonmoving party. *Weitz Co. v. Lloyd's of Lond.*, 574 F.3d 885, 892 (8th Cir. 2009). The Court considers cross motions for summary judgment by drawing inferences against each movant as warranted. *See, e.g., Wermager v. Cormorant Twp. Bd.*, 716 F.2d 1211, 1214 (8th Cir. 1983). The moving party bears the burden of showing that there is no genuine issue of material fact and that it is entitled to judgment as a matter of law. *Enter. Bank v. Magna Bank of Mo.*, 92 F.3d 743, 747 (8th Cir. 1996). A party's failure to establish an essential element of their case, one that party will bear the burden of proving at trial, mandates entry of summary judgment. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986).

Turner has failed to establish essential elements on all of his claims, so Defendants are entitled to judgment as a matter of law.[3] The Court addresses each claim in turn.

### A.   Count I:  Due Process Under 42 U.S.C. § 1983

Turner claims that he was deprived of his property rights without adequate notice or a fair hearing. (Am. Compl. ¶ 23.) He specifically argues that Defendants improperly

---

[3] Defendants argue that they are also entitled to immunity on all of Turner's claims. The Court agrees that Defendants are entitled to immunity on most, if not all, counts. For the sake of brevity, the Court primarily addresses the merits of Turner's claims below.

served him, relied on false affidavits, and deprived him of the opportunity to present evidence and cross-examine witnesses. (*Id.* ¶ 24.)

The Due Process Clause of the Fourteenth Amendment requires that states provide an individual with notice and an opportunity to be heard before depriving them of their property. *Jones v. Flowers*, 547 U.S. 220, 223 (2006). Notice must be "reasonably calculated, under all the circumstances, to apprise interested parties of the pendency of the action and afford them an opportunity to present their objections." *Mullane v. Cent. Hanover Bank & Tr. Co.*, 339 U.S. 306, 314 (1950). The opportunity to be heard must be "at a meaningful time and in a meaningful manner." *Mathews v. Eldridge*, 424 U.S. 319, 333 (1976) (quoting *Armstrong v. Manzo*, 380 U.S. 545, 552 (1965)).

Here, the record demonstrates that Turner was served the summons and complaint in the underlying civil case and given an opportunity to respond. Turner filed responses to the complaint and a response to the City's motion for summary judgment. Further, a summary judgment hearing was held that Turner had notice of but failed to attend. The records demonstrate that the summary judgment hearing was a fair hearing and Turner was otherwise given adequate notice and a meaningful opportunity to respond. It is irrelevant that Turner was served an unfiled summons and complaint because that is typical procedure in Minnesota state court. *See* Minn. R. Civ. P. 3.01. Likewise, it is immaterial that Couri served the summons because he was the City's attorney not a party to the case and thus could properly serve Turner. *See* Minn. R. Civ. P. 4.02; *see also First Nat'l Bank of Whitewater v. Estenson*, 70 N.W. 775 (1897) (mem.) (allowing service by plaintiff's attorney under similar statute that predates Rule 4.02). Turner has not shown

8

how the summons itself was otherwise improper under Minnesota rules. The Court grants summary judgment in favor of Defendants on Count I.[4]

### B. Count II: Equal Protection Under 42 U.S.C. § 1983

Turner claims that Defendants selectively enforced city ordinances against him and that their actions were motivated by discriminatory intent, thus constituting a violation of the Equal Protection Clause. (Am. Compl. ¶¶ 26-27.) Turner does not specify what trait Defendants based their alleged discrimination on. For the sake of this analysis, the Court assumes it is one that gets rational basis review because he has not alluded to race, any other suspect class, or a fundamental right.

A party claiming an equal protection violation that involves neither a suspect class nor a fundamental right must prove that they were "treated differently by the government than similarly situated persons and the different treatment was not rationally related to a legitimate government objective." *Koscielski v. City of Minneapolis*, 435 F.3d 898, 901 (8th Cir. 2006). To do so, the party must show evidence of similar individuals or entities receiving favorable treatment. *Id.*

Here, Turner has not presented any evidence regarding similarly situated individuals and Defendants' enforcement of zoning laws. He relies only on his own conclusory statements. The Court grants summary judgment in favor of Defendants on Count II.

---

[4] Turner also relies on a "TRO granted in this case" throughout his summary judgment argument. (Doc. No. 15 at 4.) The Court never granted a TRO in this case. Turner's motion for a TRO is still pending before the Court and will be denied below.

### C. Count III: Abuse of Process

Turner claims that Defendants initiated legal proceedings against him to harass him and force the forfeiture of his property. (Am. Compl. ¶ 29.) Abuse of process has two elements under Minnesota law: "the existence of an ulterior purpose and the act of using the process to accomplish a result not within the scope of the proceeding in which it was issued." *Bigelow v. Galway*, 281 N.W.2d 835, 837 (Minn. 1978). The question for the Court is "whether the process was used to accomplish an unlawful end for which it was not designed or intended, or to compel a party to do a collateral act which he is not legally required to do." *Kittler & Hedelson v. Sheehan Props., Inc.*, 203 N.W.2d 835, 840 (Minn. 1973).

Turner has not shown that Defendants used the legal process to accomplish an unlawful end or compel a collateral act that he is not legally required to do. Zoning enforcement actions are common and often lead to judgments similar to the one issued by the state court. The state court judgment compels Turner to comply with the City's zoning laws, something that he is legally required to do. Additionally, Turner has shown no evidence of an ulterior purpose other than his own accusations. The Court grants summary judgment in favor of Defendants on Count III.

### D. Count IV: Collusion Under 42 U.S.C. § 1983

Turner claims that Defendants colluded with Rockford Homes LLC to deprive him of his constitutional rights and disrupt his property use. (Am. Compl. ¶ 32.) The Court construes this as a conspiracy claim under § 1983.

To prove a § 1983 conspiracy claim, the plaintiff must show: "(1) that the defendant conspired with others to deprive him of constitutional rights; (2) that at least one of the alleged co-conspirators engaged in an overt act in furtherance of the conspiracy; and (3) that the overt act injured the plaintiff." *White v. McKinley*, 519 F.3d 806, 814 (8th Cir. 2008). Additionally, the plaintiff must show the deprivation of a constitutional right. *Ryno v. City of Waynesville*, 58 F.4th 995, 1006 (8th Cir. 2023).

There is no evidence in the record demonstrating that the City or Couri conspired with Rockford Homes LLC. Turner relies only on his own conclusory statements. Furthermore, there is no evidence that Turner was deprived of any constitutional rights, as explained previously regarding Counts I and II. The Court grants summary judgment in favor of Defendants on Count IV.

### E.  Count V: Fraud and Misrepresentation

Turner claims that Defendants misrepresented zoning laws and fabricated nuisance claims to mislead the state court and otherwise interfere with his property. (Am. Compl. ¶ 35.) The Court construes this as a claim for fraudulent misrepresentation under Minnesota law. To prove fraudulent misrepresentation, a plaintiff must show:

> (1) there was a false representation by a party of a past or existing material fact susceptible of knowledge; (2) made with knowledge of the falsity of the representation or made as of the party's own knowledge without knowing whether it was true or false; (3) with the intention to induce another to act in reliance thereon; (4) that the representation caused the other party to act in reliance thereon; and (5) that the party suffered pecuniary damage as a result of the reliance.

*Hoyt Props., Inc. v. Prod. Res. Grp., LLC*, 736 N.W.2d 313, 318 (Minn. 2007) (citation modified).

Here, Turner claims misrepresentation of the law but there is no evidence in the record of what those statements were, whether they were made knowingly by Defendants, whether they were made with the intent to induce particular action by the state court, and whether the representations caused the state court to act in such reliance.  Turner only relies on his own conclusory statements about Defendants' actions and the state court's conclusions.  This is insufficient.  The Court grants summary judgment in favor of Defendants on Count V.

F.     Count VI:  Intentional Infliction of Emotional Distress

Turner claims that "Defendants engaged in extreme and outrageous conduct with the intent to cause, or reckless disregard of the probability of causing, severe emotional distress."  (Am. Compl. ¶ 38.)

Intentional infliction of emotional distress has four elements:  "(1) the conduct must be extreme and outrageous; (2) the conduct must be intentional or reckless; (3) it must cause emotional distress; and (4) the distress must be severe."  *Hubbard v. United Press Int'l, Inc.*, 330 N.W.2d 428, 438-39 (Minn. 1983).  Extreme and outrageous conduct is conduct "so atrocious that it passes the boundaries of decency and is utterly intolerable to the civilized community." *Id.* at 439 (quoting *Haagenson v. Nat'l Farmers Union Prop. & Cas. Co.*, 277 N.W.2d 648, 652 n.3 (Minn. 1979)).

Here, Turner has not demonstrated any conduct by Defendants that could rise to the level of extreme and outrageous.  Filing a zoning enforcement action, litigating it, and obtaining an injunction are not enough.  Turner points to no other evidence in the record to support his claim.  Moreover, Turner has not provided any evidence regarding the

severity of his distress. The Court grants summary judgment in favor of Defendants on Count VI.

### G. Count VII: Trespass

Turner claims that Defendants entered his property without authorization on multiple occasions. (*See* Am. Compl. ¶¶ 41-42.) Trespass requires only two elements under Minnesota law: (1) the plaintiff has a right of possession to the land; and (2) defendant wrongfully and unlawfully enters that land. *Johnson v. Paynesville Farmers Union Coop. Oil Co.*, 817 N.W.2d 693, 701 (Minn. 2012).

The record demonstrates only one entry by Defendants on Turner's property: when Couri served the summons for the state civil case. While this is an entry, Turner has not shown that it was wrongful or unlawful, especially given the fact that Turner operated his property as a business open to the public. (*See* Doc. No. 58-1 at 9; Am. Compl. ¶¶ 4, 14, 20.) Even if the entry was unlawful, Couri is entitled to official immunity and so is the City through vicarious official immunity. *See Jepsen ex rel. Dean v. County of Pope*, 966 N.W.2d 472, 482 (Minn. 2021). Public officials are immune from tort liability for their discretionary acts unless that act is willful or malicious. *Id.* at 482-83. Malicious or willful means that the official "intentionally performs a wrongful act without legal justification or excuse or willfully violates a known right of the plaintiff." *Id.* Service of process, and otherwise litigating a zoning enforcement action, is a discretionary act. There is no evidence in the record that could support a finding of malice by Couri in entering Turner's land to serve the summons. The Court grants summary judgment in favor of Defendants on Count VII.

### H. Count VIII: Negligence

Turner claims Defendants engaged in "unlawful, reckless, and harassing behavior" that "directly and proximately caused" him harm. (Am. Compl. ¶¶ 46-47.) Negligence has four required elements: (1) duty of care; (2) breach of that duty; (3) injury; and (4) proximate cause. *Doe 169 v. Brandon*, 845 N.W.2d 174, 177 (Minn. 2014). Here, Turner has not pointed to any authority or evidence regarding what duty of care Defendants owed him or how Defendants breached that duty. The Court grants summary judgment in favor of Defendants on Count VIII.

Lastly, throughout his briefs on these motions, Turner raised a variety of other issues, including the Takings Clause, the Double Jeopardy Clause, and the Fourth Amendment's prohibition on unreasonable searches and seizures. (*See, e.g.*, Doc. No. 15 at 6-8; Doc. No. 58 at 4-6.) To the extent that the Court can or should consider these arguments as additional claims against Defendants, there is no evidence in the record to support those claims. Turner's own conclusory statements are insufficient.

In conclusion, the Court has subject-matter jurisdiction over this case except for Turner's request for injunction relief that would directly reverse the state court's judgment. The Court grants summary judgment to Defendants on all counts because Turner's claims are not supported by evidence in the record.

### ORDER

Based upon the foregoing and the record in this case, **IT IS HEREBY ORDERED** that:

1. Defendants' motions to dismiss (Doc. Nos. [17], [41]) are **GRANTED IN PART**. The motion is granted only as to Plaintiff's request for injunctive relief.

2. Defendant Michael Christopher Couri's motion for joinder (Doc. No. [46]) to Defendant City of Rockford's motion to dismiss and motion for summary judgment (Doc. No. 41) is **GRANTED**.

3. Defendants' motion for summary judgment (Doc. No. [41]) is **GRANTED**.

4. Plaintiff Bruce John Archiebald Turner's motion for summary judgment (Doc. No. [14]) is **DENIED**.

5. Plaintiff's claims are **DISMISSED WITH PREJUDICE.**

6. All other pending motions (Doc. Nos. [3], [31], [57], [59], [62]) are **DENIED AS MOOT**.

**LET JUDGMENT BE ENTERED ACCORDINGLY.**

Dated: September 15, 2025          s/Donovan W. Frank
                                   DONOVAN W. FRANK
                                   United States District Judge